No. 22-11504

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

CHARLES HAROLD BEDGOOD, JOEL WILSON BRANDON,
HANNAH LYN HEIL-BRANDON, EDDIE MATHEWS JR., REENA T.
SMITH, JUSTIN FLOYD DIAZ, CANDICE CLARK, AND ROSLIND
CHRISTINE HARPER,
PLAINTIFFS-APPELLEES,

v.

WYNDHAM VACATION RESORTS, INC., WORLDMARK, THE CLUB,
AND WYNDHAM RESORTS DEVELOPMENT CORPORATION,
DEFENDANTS-APPELLANTS.

_____

On Appeal from the United States District Court for the Middle District of
Florida, Orlando Division, No. 21-cv-00418-PGB-DCI

_____

BRIEF OF PLAINTIFFS - APPELLEES
_____

Howard B. Prossnitz
Law Offices of Howard Prossnitz PLLC
1014 Ontario Street
Oak Park, IL 60302
Telephone: 708 203-5747
prossnitzlaw@gmail.com

Dated:   August 10, 2022

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATMENT

Plaintiffs identify the following persons as interested persons and state that no corporations have any interest in Plaintiffs' claims (other than the defendants who will be filing a corporate disclosure statement):

Charles Harold Bedgood (Plaintiff)

Joel Wilson Brandon (Plaintiff)

Hannah Lyn Heil-Brandon (Plaintiff)

Paul G. Byron (U.S. Dist. Judge M.D. Fla.)

Candice Clark (Plaintiff)

Justin Floyd Diaz (Plaintiff)

Yan Grinblat (Attorney for Defendants)

Roslind Christine Harper (Plaintiff)

Daniel C. Irick (U.S. Magistrate Judge M.D. Fla.)

Eddie Mathews Jr. (Plaintiff)

J. Trumon Phillips (Attorney for Defendants)

Howard B. Prossnitz (Attorney for Plaintiff)

David S. Sager (Attorney for Defendants)

Reena T. Smith (Plaintiff)

Adam Szulczewski (Attorney for Plaintiffs)

## Statement Regarding Oral Argument

Pursuant to 11th Cir. Rule 28-1(c),   Plaintiffs-Appellees respectfully suggest that oral argument is not necessary in adjudicating this matter. Plaintiffs Bedgood, Brandon and Heil-Brandon all filed arbitration demands with the American Arbitration Association (AAA), but the AAA declined to hear those arbitrations or any other arbitrations involving Defendants. The plain language of Section 3 of the Federal Arbitration Act (FAA) makes clear that Defendants-Appellants (collectively "Wyndham" or "Defendants") are not entitled to compel arbitration under the Federal Arbitration Act because they are in default with the arbitration proceedings. They refuse to comply with AAA rules.    Further, the arbitration clause at issue says nothing about appointing a substitute arbitrator.    It refers multiple times and exclusively to the AAA as the arbitration forum.    The AAA is an available forum, but for Wyndham's negligent failure to follow AAA rules.    Plaintiffs therefore decline to request oral argument.   They respectfully submit that this appeal can be decided by a straightforward application of Section 3 of the FAA which is exactly what the district court did.

<u>**TABLE OF CONTENTS**</u>                    <u>**Page**</u>

Certificate of Interested Persons and Corporate Disclosure
Disclosure Statement      …………………………………………………….i

Statement Regarding Oral Argument …………………………………..……iii

Table of Authorities ……………………………………………………….vi

Introduction ……………………………………………………………..1

Statement of the Issues For Review ………………………………………5

Statement of the Case ……………………………………………………6

    Background …………………………………………………….....6

      A. Plaintiffs' Allegations About Wyndham's Sales Practices ………...7

      B. Plaintiff Bedgood and Plaintiff Joel Brandon File Arbitrations
         With the American Arbitration Association (AAA) ………...........9

      C. Procedural History and District Court Holding...…………………13

Summary of the Argument …………………………………………………14

Argument   …………………………………………………………….....15

      I. The Plain Language of the Federal Arbitration Act (FAA)
         Forecloses Compelling Arbitration …………………………………15

      II. Wyndham Waived Its Right to Arbitrate   ………………………....19

      III. Wyndham Breached Its Arbitration Contact ……………………..21

IV. Wyndham's Arguments on Appeal Are Not Persuasive ………..23

    A. Wyndham Failed to Argue in the District Court That
       That The Parties Had Delegated the Determination of
       Arbitrability …………………………………………………..23

    B. Wyndham's Reliance on *Attix v. Carrington Mortgage*
       *Services, L.L.C.* Is Misplaced ………………………..…………..24

    C. The AAA Did Not Undermine the Parties' Agreement to
       Arbitrate   …………………………………………………...26

    D. The District Court Correctly Declined to Appoint A
       Substitute Arbitrator ……………………………….…………..29

       1. The AAA Is Available But For Wyndham's Default ……29

       2. The AAA Is An Integral Part of the Agreement …………30

       3. Appointing a Substitute Arbitrator in All Wyndham
         AAA Cases Would Create An Undue Burden on
         Federal Courts ……………………………………………32

    E. The District Court Was Correct in Not Compelling
    Arbitration Back Again Before the AAA ………………………33

    F.   The District Court Correctly Denied the Motion to
    Compel Arbitration of the Claims of Plaintiffs Diaz and
    Clark   …………………………………………………………...33

Conclusion   ……………………………………………………………...34

Certificate of Compliance …………………………………………………...36

Certificate of Service …………………………………………………………37

## <u>TABLE OF AUTHORITIES</u>                     <u>Page</u>

### <u>Cases</u>

*Access Now Inc. vs. Southwest Airlines Company*, 385 F. 3d 1324,
1331 (11th Cir. 2002)    …………………………………………………..    23

*Attix v. Carrington Mortgage Services, L.L.C.*, 35 F. 4th 1294
(11th Cir. 2022) …………………………………………………………… 24

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S. Ct. 1740,
179 L. Ed 2d 742 (2011) …………………………………………………... 21

*AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643,
649 (1986) …………………………………………………………………...25

*Brown v. ITT Consumer Fin. Corp.*,    211 F. 3d 1217 (11th Cir.   2000) ………..31

*Buxton v. Wyndham Vacation Resorts, Inc.*, 2020 WL 9551900 at * 2,
(M.D. Fla. April 22, 2020) ………………………………………………8, 32

*Ciccio v. SmileDirectClub,LLC*, 2 F. 4th 577 (6th Cir. 2021)………………… 27, 28

*Depree v. Thomas*, 946 F. 2d 784, 793 (11th Cir. 1991) ………………………… 23

*First Options of Chicago, Inc. v. Kaplan*, 115 S. Ct. 1920, 1924 (1995) ………… 25

*Flagg v. First Premier Bank*, 644 Fed. App'x 893 (11th Cir. 2016)…………30, 31

*Freeman v. SmartPay Leasing, LLC*, 771 Fed. Appx. 926, 934 n. 4
(11thCir. 2019)……………………………………………………………. 22, 23

*Heisman v. Wyndham Vacation Resorts, Inc.*, 2021 WL 1138125 at **1, 3
(D.N.J. March 22, 2021) …………………………………………………. *passim*

*Inetianbor v. CashCall, Inc.*, 768 F. 3d 1346 (11th Cir. 2014) ……………………31

*In re Auto. Parts Antitrust Litig*., 951 F. 3d 377, 382 (6th Cir. 2020)………… 28

*Kaspers v. Comcast Corporation*, 631 F. App'x 779 (11th Cir. 2015)………18, 27

*King v. Wyndham Vacation Ownership Inc*., No. 6:18-cv-03319-MDH
(W.D. Mo. June 23, 2020) ………………………………………………………22

*Oliveira v. New Prime, Inc.*, 857 F. 3d 7, 15 (1st Cir. 2017), *aff'd*
139 S. Ct. 532 (2019) …………………………………………………………..15

*Parm v. Nat'l Bank of Cal, N.A.*, 835 F. 3d 1331 (11th Cir. 2016) ……………… 31

*Parnell v. Western Sky Fin., LLC*, 664 Fed. App'x 841(11th Cir. 2016) ………..31

*Rent-A-Center, West. Inc. v. Jackson*, 561 U.S. 63, 70 n.1 (2010) ……………… 28

*Reynolds v. Wyndham Vacation Resorts, Inc et al..*, Ct. Common Pleas,
15th Judicial Circuit, South Carolina, Case 2020-CP-26-07441,
April 5, 2021) …………………………………………………………… *passim*

*Walker v. Jones*, 10 F. 3d 1569, 1572 (11th Cir. 1994) …………………………23

## Statutes, Rules and Other

Federal Arbitration Act, 9 U.S.C. § 1 et seq. …………………………….. *passim*

RANDOM HOUSE DICTIONARY OF THE ENGLISH
LANGUAGE (2ND Ed.   1987) ……………………………………………….25

## <u>INTRODUCTION</u>

The district court's Order should be affirmed. Hundreds of thousands of Wyndham timeshare owners (Owners) were given a contractual right to straightforward, economical, efficient consumer arbitration before the American Arbitration Association (AAA). However, Wyndham refuses to comply with AAA rules. Owners do not get what they bargained for. Instead, Wyndham's practice requires that consumers must file lawsuits as well as arbitration claims.

The AAA refuses to hear arbitration claims filed against Wyndham because Wyndham will not comply with the rules of the AAA. In particular, Wyndham will not change the provision in its arbitration clause that requires all arbitrations proceed only in Orange County, Florida, Nor will it remove the bar on consequential damages in its contracts. These provisions are at odds with AAA consumer rules and policies.

Wyndham picked the AAA to be the sole arbitration forum. It could have picked another forum. It should comply with AAA rules. The district court correctly refused to grant Wyndham's motion to compel arbitration which would have continued a wild goose chase by sending

Plaintiffs back to the AAA two years after they started there, and then possibly back to federal court, or possibly to some unknown substitute arbitrator.

Wyndham's refusal to adhere to AAA rules makes Wyndham Owners unwilling participants in what one federal district judge has described as Wyndham's "shell game".[1]

Here is how the shell game unfolds:

▪ Tens of thousands of Wyndham timeshare Owners have a mandatory consumer arbitration clause;

▪ The clause designates the AAA as the sole arbitration forum;

▪ The clause dictates that arbitration claims can only proceed in Orange County, Florida and bars the recovery of consequential damages;

▪ The AAA rejects Wyndham arbitration claims because Wyndham's arbitration clause violate AAA rules and policies, and Wyndham refuses to change it;[2]

---

[1] *Heisman v. Wyndham Vacation Resorts, Inc.*, 2021 WL 1138125 at **1, 3 (D.N.J. March 22, 2021).

[2] In *Reynolds v. Wyndham Vacation Resorts, Inc et al..*, Ct. Common Pleas, 15th Judicial Circuit, South Carolina, Case 2020-CP-26-07441, April 5, 2021)(Slip. Op.) (Doc. 13-2 Page ID178), Wyndham's Reply Brief acknowledges that the AAA has rejected numerous Wyndham arbitrations due to Wyndham's venue provision and limitations on damages;

▪ Wyndham refuses to make the simple fixes that would render its arbitration clause AAA compliant, ie. to eliminate Orange County, Florida as the sole exclusive arbitration venue and to take out the limitation on consequential damages; and,

▪       Instead, Wyndham moves to compel arbitration and send consumers back to the AAA or to some unknown substitute arbitrator.

The federal policy of favoring arbitration does not elevate form over substance so that arbitration becomes a shell game.   Wyndham's shell game takes years to complete, involves detours into federal and state court, and is expensive.    Wyndham's arbitration clause tells consumers that arbitration is "simpler" than proceeding in court.   Yet, Wyndham makes consumers do both – file arbitrations and file lawsuits.

This Court should decline Wyndham's request for appointment of a substitute arbitrator.   If federal district courts have to repeatedly select substitute arbitrators for the AAA in Wyndham cases, it will impose an undue burden on the courts. With substitute arbitrators, Owners will end up at unknown arbitral forums. When Owners sign Wyndham timeshare contracts, they are told disputes will be resolved with AAA consumer arbitration rules.   They are not told that because Wyndham refuses to obey these rules, the AAA does not hear Wyndham cases.

Plaintiffs Charles Bedgood, Joel Brandon and Hannah Heil-Brandon all followed the dispute resolution procedure in Wyndham's arbitration clause. *Id*. at Page ID 861. These Plaintiffs all filed consumer AAA arbitrations. Claims are filed on line and the filing fee is only $200. Doc. 13-5 at PageID 234-236.[3] The AAA declined to hear the claims due to Wyndham's refusal to follow AAA rules. Plaintiffs then filed suit in the Middle District of Florida.

In denying Wyndham's motion to compel arbitration, the district court correctly applied Section 3 of the Federal Arbitration Act (FAA) which states " that a court in any suit with an arbitrable issue 'shall on application of the parties stay the trial of the action until such arbitration *has been had* in accordance with the terms of the agreement, providing the applicant for the stay is *not in default* in proceeding with such arbitration.' 9. U.S.C. § 3…" (emphasis added by the district court). *Id*. at PageID 857.

---

[3] The pages in Volume II of Defendants' Appendix are misnumbered. Page ID 475 is followed by a page with no Page ID. Then, the following page jumps to Page ID 670. There are no Page ID's 476 to 669. To avoid confusion and renumbering, Plaintiffs use the same Page ID's that are stamped in Volume II of Defendants' Appendix, even though there is a missing gap.

The district court correctly held that since the Wyndham Defendants failed to comply with AAA rules, "that Defendants are in default with their contractually chosen forum… (a)ccordingly, based on the text of §3, Defendants cannot apply for a stay in the current action as they are in default with the arbitration proceedings". *Id*. at PageID 859.

Finally, there is record evidence that the AAA would be unwilling to hear arbitration claims if filed by Plaintiffs Diaz and Clark against Worldmark.  The complaint alleges that Worldmark arbitration clause suffers from the same defects as the Wyndham clause. Doc. 1, ¶ 3.  The AAA has removed <u>both</u> Wyndham and Worldmark from its Consumer Clause Registry. This Registry identifies the companies for whom the AAA will administer consumer arbitrations.  Doc. 1 ¶ 4. Therefore, the AAA would decline to hear Worldmark cases.

## STATEMENT OF THE ISSUES FOR REVIEW

1.   Did the District Court correctly hold that Wyndham is not entitled to compel arbitration under the Federal Arbitration Act because it is in default with the arbitration proceedings?

2. Alternatively, did Wyndham waive or breach its arbitration clause?

3.  Did Wyndham waive its argument concerning delegation of the issue of arbitrability, and even if it did not, does the arbitration clause provide for delegation?

## STATEMENT OF THE CASE

The district court stated that "(t)his case arises from Plaintiffs' diligent search for a proper forum to litigate their claims against Defendants."  Doc. 57 at PageID 850.   Plaintiffs' search started two years ago with the filing of arbitration demands before the AAA.   When the AAA declined to administer the arbitrations due to Wyndham's refusal to follow the rules of its own chosen arbitral forum, Plaintiffs filed suit in the   Middle District of Florida. Wyndham then moved to compel arbitration. The district court denied Wyndham's motion to compel arbitration. The court looked no further than the plain language of the Federal Arbitration Act (FAA) to reach its holding.

## Background

Wyndham operates the world's largest timeshare business with 925,000 members and 220 resorts.   Doc. 1 ¶29.   Wyndham sells timeshare points to consumers which are supposed to be currency allowing one to stay

6

at any Wyndham or affiliated resort throughout the world.   (*Id*. ¶32.)   In fact, availability is scarce.     None of the Plaintiffs have been able to use their timeshares to stay at their desired locations.   Doc. 1 ¶¶ 45-49.

### A.   Plaintiffs' Allegations About Wyndham's Sales Practices

Prior to their purchases of Wyndham timeshare points, Bedgood and the other plaintiffs were told that they would have a "dizzying array of choices and will be able to stay at their desired property wherever it might be".   (*Id*. ¶ 32.) However, when Plaintiff Bedgood and the others went to use their timeshare points, they found that there was limited or no availability. ( *Id*. ¶¶45-49.) Bedgood has not used his Wyndham timeshare at all.   It cost him $23,000.   ( Id.¶ 45.) He requested that Wyndham cancel his timeshare, but Wyndham refused to do so.

The Brandon Plaintiffs entered into their Wyndham contract on May 21, 2019 for a price of $16,874. ( *Id*. Ex. F.) They were unable to stay at their desired locations. Wyndham refused their request to cancel their contract. Similarly, Plaintiffs Clark and Diaz have never used their $46,349 timeshare due to a lack of availability. (¶*Id*. 48.)   Nor have Plaintiffs Mathews and Smith been able to book their desired locations. (*Id*. ¶ 47.)   Single mother

Plaintiff Roslind Harper has not been able to use her timeshare at her desired locations. She has made numerous unsuccessful attempts to cancel her timeshare. (¶*Id.* 49.)

Wyndham entices consumers to attend sales presentation with a "free" prize if they attend a ninety minute timeshare sales presentation. In fact, the sales presentations last up to three hours.   (*Id.* ¶ 37(b).) Wyndham markets and sells vacation ownership interests in the form of points, provides consumer financing in connection with the sale of points, provides property management services to the purchasers, and develops and acquires vacation ownership resorts. ( *Id.* ¶30.) Purchasers buy points so they supposedly can travel to their desired location whether it is Scotland, Colorado, Hawaii or some other place. In fact, destinations are not available at the desired time and have to be booked as much as a year in advance, assuming they are even available. (*Id.* ¶ 33.) In *Buxton v. Wyndham Vacation Resorts, Inc.*, 2020 WL 9551900 at * 2,   (M.D. Fla. April 22, 2020), one of fifty-nine related cases filed against Wyndham in the Middle District of Florida, the court gave an overview of the deceptive Wyndham sales process.

… Defendants invited the Buxtons, who were vacationing in Orlando, Florida, to a presentation about Defendants' programs that would last no longer than ninety minutes. But the presentation was not as advertised. It lasted multiple hours…

In all the cases, at the presentations, the Sales Agents told Plaintiffs: the deal was good only for day; the Sales Agents would be Plaintiffs' personal representatives, helping them to make the most of their timeshare; the timeshare was a good investment and Plaintiffs could rent out their timeshares to cover all costs.   But these statements weren't true and the Sales Agents knew it.    The Sales Agents also exaggerated the usefulness of points and reservation availability to stay at resorts.     Plaintiffs all relied on these statements in purchasing timeshares.    And when the time came to sign the timeshare contracts, the Sales Agents did not adequately explain Plaintiffs' rescission rights, rushed the closing process, and told Plaintiffs where to sign and initial without explaining what Plaintiffs were signing.

These same misrepresentations and omissions were experienced by Plaintiffs.

## B.    Plaintiff Bedgood and Plaintiff Joel Brandon File Arbitrations With the American Arbitration Association (AAA)

On January 26, 2021, after being unable to use his timeshare and having his request for cancellation denied, Plaintiff Bedgood filed an arbitration demand with the AAA as prescribed in his Wyndham contract. The Wyndham arbitration clause reads:

9

## DISPUTE RESOLUTION/ARBITRATION

**PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT CERTAIN DISPUTES MUST BE RESOLVED BY BINDING ARBITRATION. IN ARBITRATION YOU GIVE UP THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. <u>ARBITRATION PROCEDURES ARE SIMPLER</u> AND MORE LIMITED THAN COURT PROCEDURES, AND ARE SUBJECT TO VERY LIMITED REVIEW.**

**34. Dispute Resolution/Arbitration.** Any Disputes between the Parties <u>shall be resolved</u> as follows:

**(a) Definition of Disputes.** The Parties agree that any dispute, claim, suit, demand or controversy arising out of or relating to this Agreement (any ***"Dispute')*** <u>shall be determined</u> exclusively and finally by individual arbitration, except as specified below. "Dispute" includes, without limitation, any claim regarding any breach, termination, enforcement, interpretation or validity of this Agreement, any claim arising out of or related to the marketing, purchase, and/or use of Owner's Ownership, Owner's use of Seller's properties, and/or Owner's participation in any activities/events sponsored, organized, or made available by Seller or any of its affiliates.

**(b) Neutral Arbitrator/No Jury.** Any Dispute <u>will be submitted</u> to a neutral arbitrator, for a final and binding determination, known as an award. The arbitrator is an independent decision maker, appointed by the American Arbitration Association ***("AAA"),*** who reviews and weighs evidence provided by both Parties, and issues an award

enforceable in court. Decisions by an arbitrator are subject to very limited review by a court. Except as expressly provided below in this Dispute Resolution/Arbitration clause, the Parties waive and relinquish any and all rights to have a court or a jury resolve any Dispute. The Parties expressly waive any right to a jury trial.

…

**(e) Applicable Rules/Location.** This arbitration agreement is governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.). The arbitration shall be administered by the AAA under its Consumer Arbitration Rules, available online at www.adr.org or by calling the AAA at 1-800-778-7879 (the ***"AAA Rules")***, except **that** the Parties expressly agree that the AAA Supplementary Class Rules shall not apply, given the express class waiver above, and further agree that Rules 14(a) and 53 of the Consumer Arbitration Rules shall not authorize any arbitrator or court to find that any class, mass, collective or representative claim may be arbitrated. The arbitration shall be held in the County of Orange, State of Florida unless the Parties agree to another location in writing, or the arbitrator decides to hold a telephonic hearing to reach a decision based solely on the Parties' submission of documents, or to designate another location reasonably convenient for the Parties. In the event of any conflict between the AAA Rules and this Agreement, the provisions of this Agreement shall be controlling.

…

**(h) Payment of Fees.** The payment of all fees for registration, filing and administration of the arbitration, and the payment of **arbitrator** fees, shall be governed by the AAA Rules and applicable law, unless otherwise stated in this Agreement. The Parties shall bear their own legal fees and legal expenses for any arbitration proceeding.

**(i) Notice and Good Faith Negotiation.** Any Party intending to file an arbitration demand against the other Party must notify the other Party at least thirty (30) days before filing. The Parties agree to attempt to negotiate a mutually agreeable resolution to resolve any such dispute or claim during this period. If a Party filing an arbitration demand fails to provide that notice, the other Party is entitled to seek a stay of the arbitration proceeding from the AAA for thirty (30) days and to participate in settlement negotiations during that period in good faith.

 (Underlining supplied.) Doc. 1-2 at PageID 61-62.

In addition, the Wyndham timeshare purchase contracts have a Limitation of Liability clause which bars recovery of consequential, indirect, incidental, special, exemplary, punitive or enhanced damages.   Doc. 1-2, Page ID 62.

On February 24, 2021, the AAA sent Plaintiff Bedgood a letter declining to administer his arbitration.   The AAA wrote:

Claimant has filed a demand for arbitration.   We note that the arbitration clause provides for arbitration by the American Arbitration Association ("AAA").

Prior to the filing of this arbitration, Wyndham Vacation Club failed to comply with the AAA's policies regarding consumer claims.   Accordingly, we must decline to administer this claim and any other claims between Wyndham Vacation Club and its consumers at this time…. either party may choose to submit its dispute to the appropriate court for resolution.
Doc. 1-2 at PageID 35-36.

In accordance with the AAA arbitration clause, the Plaintiff Joel Brandon also filed a demand for arbitration. On December 30, 2020, the AAA sent him the same letter that it had sent to Plaintiff Bedgood. Doc. 1-2 Page ID 33-34. The AAA declined to administer the arbitration or any other Wyndham arbitrations because Wyndham failed to comply with AAA's policies regarding consumer claims. (Doc. 1 ¶ 46.) The remaining plaintiffs concluded that it would be futile to file arbitration demands with the AAA.

## C. Procedural History and District Court Holding

On March 3, 2021, Plaintiffs Bedgood, Brandon, Heil-Brandon, Mathews, Smith, Diaz, Clark and Harper filed this suit. Wyndham moved to compel arbitration of the very same claims that the AAA refused to hear. Wyndham argued that "…the arbitration provision remains valid and a court must appoint a substitute arbitrator." (Doc. 11 at PageID 127.) It made no request in its Motion to Compel Arbitration to send the claims back to the AAA.[4] Doc. 11.

---

[4] However, in its Reply In Support of Motion to Compel Arbitration, Wyndham wrote that an order compelling arbitration would permit the parties to arbitrate before the AAA. (Doc. 19 at PageID 292.)

On September 21, 2021, Magistrate Judge Irick entered a Report and Recommendation that arbitration be compelled before the AAA, even though (i) Wyndham's Motion to Compel did not even request that relief, (ii) the AAA is not a party to this case, and (iii) Plaintiffs had already unsuccessfully sought AAA arbitration. (Doc. 48.) Plaintiffs filed Objections to the Report and Recommendation.   (Doc. 49.) On March 30, 2022, the district court entered an Order correctly rejecting the Report and Recommendation. (Doc. 57.) The district court correctly denied Wyndham's Motion to Compel Arbitration. On April 29, 2022, Wyndham filed a Notice of Appeal.   (Doc. 65.)

## SUMMARY OF THE ARGUMENT

The district court correctly held that this case can be decided simply based on the plain language of Section 3 of the FAA. Wyndham is in default on the AAA arbitration proceedings and therefore, arbitration cannot be compelled. The analysis can stop right there. Alternatively, there is ample basis to find that Wyndham waived its right to arbitrate and breached its arbitration agreement.

None of Wyndham's arguments on appeal carry the day.    Its

14

argument that the decision on arbitrability was delegated to the arbitrator was never made in the district court. This argument cannot be made for the first time on appeal. Further, Wyndham's arbitration clause has no delegation language. Nor does the clause make any provision for appointment of a substitute arbitrator. Moreover, the AAA would have refused to hear arbitration claims filed against Worldmark by Plaintiffs Diaz and Clark.

<u>**ARGUMENT**</u>

## I.    THE PLAIN LANGUAGE OF THE FEDERAL ARBITRATION ACT (FAA) FORECLOSES COMPELLING ARBITRATION

The district court correctly held that " the FAA alone forecloses the Court from compelling arbitration in the case.  Doc. 57 at PageID 857. A court can only compel arbitration if it has authority to do so under the FAA. *Oliveira v. New Prime, Inc.*, 857 F. 3d 7, 15 (1st Cir. 2017), *aff'd* 139 S. Ct. 532 (2019).  Section 3 of the FAA states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the

trial of the action until such arbitration has been had in accordance with the terms of the agreement, *providing that the applicant for the stay is not in default in proceeding with such arbitration.* 9 U.S.C. § 3 (emphasis supplied.)

The district court wrote:

….the FAA [Federal Arbitration Act] alone forecloses the Court from compelling arbitration in this case. …

Section 3 states that a court in any suit with an arbitrable issue 'shall on application of the parties stay the trial of action until such arbitration *has been had* in accordance with the terms of the agreement, providing the applicant for the stay is *not in default* in proceeding with such arbitration.' 9. U.S.C. § 3 (emphasis added). After the initial grant of authority allowing a court to stay litigation pending arbitration, Congress included a modifying clause stating that 'providing the applicant for stay is not in default in proceeding with such arbitration.' *Id.*

By using the word 'providing' in the modifying clause, Congress created a condition that a party cannot properly request the court to stay litigation if said party is in default with the arbitration proceedings. Further, it is logical that a party in default with arbitration – whether from failing to follow the rules of the designated forum or failing to pay the appropriate filing fees – cannot turn around and ask the Court to stay the pending litigation that arose from its own indolence….

In the instant case, Plaintiffs included letters from the AAA refusing to arbitrate these claims *and* all future arbitrations between Defendants and its consumers as '[Defendants] failed to comply with AAA's policies,' thereby demonstrating that Defendants are in default with their contractually chosen forum. (Doc. 1-2, p. 2). Accordingly, based on the text of § 3,

> Defendants cannot apply for a stay in the current action as they are in default with the arbitration proceedings. Doc. 57 at PageID 857-859.

The district court went on to hold that the plain meaning of the word "default" included Wyndham's failure to comply with the AAA's policies.

The court in *Heisman*, *supra*, reached the exact same conclusion based on identical facts --- Wyndham timeshare Owners filed AAA arbitration claims, the AAA declined to administer, and the AAA said that the Owners were free to file suit in court. After suit was filed, Wyndham moved to compel arbitration. The court in *Heisman* found that the FAA did not allow Wyndham to compel arbitration. It wrote:

> There has been no failure, neglect or refusal on Plaintiffs' part to arbitrate. To the contrary, they complied with the rules of arbitration as provided in the Agreement. Those very rules led the Plaintiffs back to court. There is no basis for a court to send them back to arbitration. (Citations omitted.)

> Here the arbitration 'has been had' as far as was possible. Plaintiffs followed the arbitration procedure and were rebuffed by the AAA, which directed them to court. As a result § 3 is not available to force them back to arbitration. (Citation omitted.) In addition, § 3 does not allow for a stay if the applicant is 'in default in proceeding with such arbitration.' By failing to comply with arbitration rules, Wyndham is in default and thus cannot enforce arbitration. (Citations omitted.)

17

> Thus, from any vantage point, the text of the FAA does not provide the court a basis to compel arbitration here.    2021 WL 1138125 at * 3.

The same reasoning applies here. Plaintiffs did what they were supposed to do under the arbitration clause. Their arbitration demands were rejected by the AAA. Wyndham was in default for not following AAA rules. This case can and should be decided on the plain language of Section 3 of the FAA.

Further, the district court properly distinguished *Kaspers v. Comcast Corporation*, 631 F. App'x 779 (11th Cir. 2015). Unlike Wyndham's arbitration clause, the clause in *Kaspars* explicitly allowed the selection of a substitute arbitration organization. *Id*. at Page ID 860. The district court also correctly determined that the AAA was an available forum, but for Wyndham's negligent failure to follow AAA rules. *Id*. at Page ID 862.

In *Heisman, supra* at *1, the court characterized Wyndham's motion to compel arbitration as "chutzpah" because Wyndham was trying to send the plaintiffs back to the AAA. Wyndham chose not to  appeal the *Heisman* decision.

Wyndham's refusal to comply with the rules of AAA, its sole designated arbitration forum, turns the whole purpose of arbitration upside

down. Wyndham's shell game sends consumers on a "circumnavigation" (Id. at * 4) from the AAA to state or federal court, then back to the AAA, or some other place if a court appoints a substitute arbitrator, or back to court if an AAA arbitrator applies AAA rules to decline arbitration.

Wyndham disingenuously claims its argument is supported by the general federal policy favoring arbitration. Wyndham's strained approach to arbitration does just the opposite. It does not favor arbitration. It favors a runaround.      It is a Kafkaesque lose-lose scenario for consumers. They lose the efficiency of arbitration and they lose the advantage of proceeding in federal court with broad discovery. Consumers end up with the worst of both worlds. Wyndham deceptively offers customers the promise of "simpler" arbitration knowing full well that it will put them through the wringer.

## II.    Wyndham Waived It Right to Arbitrate

An alternative basis for upholding the denial of Wyndham's motion to compel arbitration is that "Wyndham's failure to follow arbitration rules also amounts to a waiver of the right to compel arbitration".   *Heisman, supra,* at * 3.    The *Heisman* court explained:

19

Wyndham itself defeated the plaintiffs' filing of a claim in Wyndham's chosen AAA forum by failing to cooperate.   It has waived its right to arbitrate.   It is not equitable to   permit Wyndham to give Plaintiffs a runaround, then reinvoke the arbitral forum Plaintiffs were seeking in the first place.   *See Stanley* [*v. A Better Way Wholesale Autos, Inc.*] 2018 WL 3872156, at *6 ("A party cannot raise unjustifiable objections to a valid demand for arbitration, all the while protesting its willingness in principle to arbitrate and then, when the other side has been forced to abandon its demand, seek to defeat a judicial determination by asking for arbitration after suit has been commenced,"(quoting *Lane, Ltd. v. Larus & Bro. Co.*, 243 F. 2d 364, 367 (2d Cir. 1957))).   As in the old shell game, plaintiff's forum will always be under the other shell, unless the court calls a halt. 2021 WL 1138125 at *3.

Plaintiffs have been prejudiced by Wyndham's runaround. They have sustained considerable delay starting in the fall of 2020.   They have had to pay court filing fees in addition to arbitration fees as the result of Wyndham's actions.

Waiver was also found in *Reynolds v. Wyndham Vacation Resorts, Inc. et al.*, Ct. Common Pleas, 15th Judicial Circuit, South Carolina, Case 2020-CP-26-07441, April 5, 2021)(Slip. Op.) (Doc. 13-2 Page ID174-184).   The court held that Wyndham had waived its ability to arbitrate. It wrote:

Plaintiffs did everything required of them pursuant to the 2018 Agreement by attempting to arbitrate the claim.   Wyndham cannot mandate arbitration pursuant to the AAA, refuse to

comply with AAA's requirements, and then compel Plaintiffs to arbitrate pursuant to the rules it has cherry picked, Wyndham's motion to dismiss and compel arbitration is therefor denied.  *Id.* at PageID 178.

For the same reasons, Wyndham has waived its ability to arbitrate here.

## III.    Wyndham Breached Its Arbitration Contract

As yet a third independent reason for denying Wyndham's motion to compel arbitration, Wyndham materially breached its contracts with Plaintiffs. The *Heisman* court concluded that Wyndham's failure to follow AAA rules was a material breach of contract:

> … Wyndham has materially breached the Agreement.  The FAA provides that arbitration agreements may be found unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).
> 2021 WL 1138125 at *4.

*Reynolds, supra,* similarly held that "…Wyndham has breached its own contract by refusing to comply with the AAA's rules concerning forum selection and consumer remedies." (Doc. 13-2 at PageID 178. ) The *Reynolds* court quoted Wyndham's Reply Brief in which Wyndham acknowledged that it was unwilling to change its arbitration clause to comply with AAA rules. Specifically, Wyndham refused the AAA's request to change the

21

provision requiring that arbitration occur in Orange County, Florida, and the provision placing a limitation on recoverable damages. Doc. 13-2 at PageID 178. Thus, three courts to consider this same exact situation have denied Wyndham's motion to compel arbitration: the district court here, *Heisman* and *Reynolds*.[5]

Eleventh Circuit law is in accord with *Heisman* and *Reynolds*. A party waives its right to arbitrate and breaches its arbitration agreement if it does not follow its selected arbitration forum rules. In *Freeman v. SmartPay Leasing, LLC*, 771 Fed. Appx. 926, 934 n. 4 (11th Cir. 2019), this Court wrote:

> For the same reasons that the district court did not err in concluding that SmartPay waived its right to compel arbitration,

---

[5] In the unpublished decision of *King v. Wyndham Vacation Ownership Inc.*, No. 6:18-cv-03319-MDH (W.D. Mo. June 23, 2020), Doc. 11-1, Page ID 142-148, the court noted that Wyndham refused to change its arbitration clause to comply with AAA rules. *Id.* at PageID 143. The court's decision to appoint a substitute arbitrator was based in part on evidence in the record that "Wyndham was legitimately surprised at the AAA's decision to reject the [Plaintiffs'] Coles' claim without the waiver of certain contractual provisions." *Id.* At PageID 144. The Court said "(t)he AAA's decision in this matter has surprised the Court, Wyndham and the Plaintiffs alike…" There is no such evidence of surprise here. The June 23, 2020 *King* decision preceded the AAA's refusal to arbitrate the Brandons' claim on December 30, 2020, and its refusal to hear Bedgood's claim on February 24, 2021. Doc. 1., Exs. A and B. Thus, Wyndham cannot assert any surprise that the AAA would not hear Plaintiffs' arbitration cases.

the district court did not err in concluding that SmartPay
breached the arbitration agreement when it refused to pay JAM's
initial filing fee.    As explained above, SmartPay drafted a lease-
purchase agreement requiring arbitration and designating JAMS
as an acceptable forum and, therefore, SmartPay was obligated
to pay the initial filing fee.

Here, Wyndham breached its arbitration agreement by refusing to follow

AAA consumer rules.

### IV.   Wyndham's Arguments on Appeal Are Not Persuasive

### A. Wyndham Failed to Argue in the District Court That The Parties Had Delegated the Determination of Arbitrability

An argument raised for the first time on appeal should not be

considered.    As stated in *Access Now, Inc. vs. Southwest Airlines Company*, 385

F. 3d 1324, 1331 (11th Cir. 2002):

This Court has 'repeatedly held that 'an issue not raised in the
district court and raised for the first time in an appeal will not be
considered by this court'".   *Walker v. Jones*, 10 F. 3d 1569, 1572
(11th Cir. 1994)( quoting *Depree v. Thomas*, 946 F. 2d 784, 793 (11th
Cir. 1991)….

Wyndham's Motion to Compel Arbitration says nothing about delegating

the "threshold" issue of arbitrability to the arbitrator. Doc. 11. Nor does

Wyndham's Response to Plaintiffs' Objections to the Report and

Recommendation of the Magistrate contain this argument.    Doc. 50.    Two

months after the district court denied Wyndham's Motion to Compel Arbitration, this Court decided *Attix v. Carrington Mortgage Services, L.L.C.*, 35 F. 4th 1294 (11th Cir. 2022). With the *Attix* decision, Wyndham decided to make its delegation of arbitrability argument – an argument that it had never made in the district court. Yet, in hanging its hat upon *Attix*, Wyndham is trying to fit a square peg into a round hole.

### B. Wyndham's Reliance on *Attix v. Carrington Mortgage Services, L.L.C.* is Misplaced

Even if the merits of Wyndham's citation of *Attix* are considered, its argument fails. There are crucial differences between *Attix* and this case. In *Attix*, the plaintiff began by filing suit. Here, Plaintiffs began by filing AAA arbitrations. *Attix* did not involve any issue about whether the defendant was in default on the arbitration agreement. Here, Wyndham's default is the main issue.

Further, in *Attix*, the arbitration clause had *express* delegation language stating, "(t)he arbitrator shall also decide what is subject to arbitration unless prohibited by law". *Id*. at 1296-97. There is no such express delegation language in Wyndham's clause. The U.S. Supreme Court wrote

24

in *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) that "(c)ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e] evidence that they did so", citing *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986). There is no clear and unmistakable evidence that Wyndham and the Plaintiffs sought to delegate arbitrability to the arbitrator.

Wyndham's argument that the "threshold" issue of arbitrability must be decided by the arbitrator is also flawed. Simply put, there is no "threshold" issue of arbitrability here. Plaintiffs did not contest arbitrability at the threshold of their claims. Rather, they acknowledged arbitrability when they filed their arbitration demands. They ceased to acknowledge arbitrability when the AAA declined to arbitrate.

The ordinary definition of a threshold is important. A threshold is "the entrance to a house or building", a "place or point of entering or beginning". *Threshold*, THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE (2ND Ed. 1987). There is only one threshold to a dwelling. Wyndham's argument posits multiple thresholds. Wyndham wants an AAA arbitrator to decide "threshold" arbitrability. An arbitrator

would be free to decide that this case is no longer arbitrable due to Wyndham's default under Section 3 of the FAA.   The case would then go back to the Middle District of Florida after having started in the AAA, after having been filed in the Middle District of Florida, after being reviewed by this Court, and then would return to the AAA or another arbitrator, and then possibly go back to the Middle District of Florida for a second time.   The words of the *Heisman* opinion are on point, "(a)s in the old shell game, plaintiff's forum will always be under the other shell, unless the court calls a halt." *Heisman*, *supra* at *3.

## C.   The AAA Did Not Undermine The Parties' Agreement to Arbitrate

The AAA administrator is not a road block to arbitration.    Rather, it is Wyndham's refusal to comply with the rules of the AAA that stopped arbitration in this case. Wyndham picked the AAA as the only arbitration forum.   Wyndham incorporated AAA consumer rules into its arbitration clause.    Wyndham could have selected any arbitration forum it wanted, and it could have made a provision for the appointment of a substitute arbitrator, but having chosen the AAA and having said nothing about a

substitute arbitrator , it needs to follow the AAA consumer rules.

Wyndham invokes *Kaspers v. Comcast Corporation*, 631 F. App'x 779

(11th Cir 2015) to argue that the AAA's refusal to hear Wyndham arbitrations

against does not preclude arbitration.    However, the district court correctly

distinguished *Kaspers*:

> In *Kaspers*, the parties' arbitration agreement specifically held
> that if the contractually selected arbitrator would not enforce the
> agreement, then "the parties shall agree on a substitute
> arbitration organization." No. 1:12-cv-01397, 2013 WL 12177928
> at *3 (N.D. Ga. Feb. 26, 2013).    Thus, the district court held that
> the plaintiff had "failed to fully seek arbitration under the terms
> of the Arbitration Provision" and properly compelled arbitration
> under § 4 of the FAA…. Consequently, just as the district court
> in *Kaspers* held that the compulsion of arbitration was proper as
> the plaintiff had *failed to follow* the written agreement, the Court
> here cannot compel arbitration as Plaintiffs *have followed* the
> Agreement in initially seeking arbitration.
> Doc. 57 at PageID 860-861.

Wyndham cites out of circuit authority, *Ciccio v. SmileDirectClub,LLC*,

2 F. 4th 577 (6th Cir. 2021) to argue that the AAA administrator's decision to

decline to arbitrate should be ignored.    Judge Clay, however, wrote a

lengthy dissent in *Ciccio* in which he directly rejects this argument.    He

wrote:

> The majority attempts to make an issue of the fact that the AAA

administrator, rather than "an arbitrator", applied the Healthcare Policy Statement to the parties' agreement.
2 F. 4th at 591.

Judge Clay pointed out that the administrator was empowered by AAA rules to decide whether the AAA should take the case and that the AAA rules were directly incorporated into the parties' arbitration agreement. The same is true here.   AAA rules specifically provide that an administrator will decide whether an arbitration will proceed.   Judge Clay wrote:

> When the parties agreed that the dispute "shall be resolved using the rules of the AAA," they were aware that those rules called for an administrator to render the AAA's initial determination regarding the requirements of the organization's own rules before proceeding to arbitration. … That provides the "clear and unmistakable" evidence that the parties intended to have these gateway issues decided in accordance with the AAA's procedures and policies. …

> As we have stated, "we should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *In re Auto. Parts Antitrust Litig*., 951 F. 3d 377, 382 (6th Cir. 2020)(quoting *Rent-A-Center*, 561 U.S. at 70 n. 1,  130 S. Ct. 2772).  *To allege that the parties here wanted to contract the AAA's administrator out of the process, in the absence of any evidence to that effect, is to ignore that the parties intended to have their disputes resolved under the rules of the AAA.   Id*. at 591-592.   (Emphasis supplied.)

Similarly, Wyndham's arbitration clause expressly states that "(t)he

arbitration shall be administered by the AAA under its Consumer Arbitration Rules…" Doc. 57 at PageID 852. Those rules delegate to the AAA administrator the decision making power on whether the AAA should hear the matter. The administrator is not rewriting Wyndham's contract. Just the opposite is true. The contract incorporates AAA Consumer Rules which empowers the administrator to make the decision on whether the arbitration claim should proceed at the AAA.

### D.   The District Court Correctly Declined to Appoint a Substitute Arbitrator

### 1.   The AAA Is Available But For Wyndham's Default

Both Magistrate Irick and Judge Byron found that the AAA is an available forum. Magistrate Irick wrote:

> In the briefing, much ink was spilled over the issue of whether the AAA is available as a forum and, if not, whether the AAA as a forum is integral to the Arbitral Agreement. But those issues are just not in dispute and, this, are not in need of decision – the parties agree the forum is available. To be sure, both parties assert it is available. Doc. 48 at PageID 676, n. 3.

Judge Byron noted that Wyndham claimed in its Motion to Compel that a substitute arbitrator was needed because the AAA was unavailable, but then in its Reply reversed course to argue that the AAA was available. Doc. 57

at PageID 861-821.    Judge Byron went on to correctly conclude, "… upon the Court's review the AAA is an available forum if it were not for Defendants' negligent failure to follow the AAA's rules." Doc. 57 at PageID 862.    Since the AAA is available, but for Wyndham's failure to follow AAA rules, a substitute arbitrator is not required.    There is no unavailability of the designated forum.

### 2.   The AAA Is an Integral Part of the Agreement

This Court has consistently refused to appoint substitute arbitrators when the designated arbitral forum is an integral part of the agreement, especially when the arbitration agreement makes no provision for appointment of a substitute arbitrator.    In *Flagg v. First Premier Bank*, 644 Fed. App'x 893 (11th Cir. 2016), the arbitration clause provided that all disputes would be resolved by the Code of Arbitration Procedure of the National Arbitration Forum (NAF).    However, the NAF decided not to accept consumer arbitrations.    The court wrote:

> Under § 5 of the Federal Arbitration Act, when the arbitral forum is unavailable, the court can appoint a substitute arbitrator. (Citation omitted).  Because arbitration is a matter of contract, however, we have held that an arbitration agreement is only

30

enforceable if the choice of forum is not an integral part of the agreement to arbitrate.     644 Fed. App'x at 894.

The court further found:

> … here the chosen arbitral forum is referenced throughout the arbitration provision…. Here, the NAF pervaded the arbitration provision.  It was designated as the exclusive forum and its Code of Procedure was selected to govern all claims.  *Id*. at 896.

Accordingly, the court refused to compel arbitration. The Court distinguished *Brown v. ITT Consumer Fin. Corp.*,  211 F. 3d 1217 (11th Cir. 2000) which is relied upon by Wyndham.   In *Brown*, there was no explicit designation of an arbitral forum.  *See also Parnell v. Western Sky Fin., LLC*, 664 Fed. App'x 841(11th Cir. 2016)(substitute arbitrator request denied – designated arbitrator unavailable and integral); *Parm v. Nat'l Bank of Cal, N.A.*, 835 F. 3d 1331 (11th Cir. 2016)( substitute arbitrator could not be appointed and motion to compel arbitration denied); and *Inetianbor v. CashCall, Inc.*, 768 F. 3d 1346 (11th Cir. 2014)( substitute arbitrator denied and motion to compel denied.)   The district court emphasized that Wyndham's arbitration clause   is "(w)ithout any mention of a substitute arbitrator…" Doc. 57 at PageID861.    The clause does not make provision for the appointment of a substitute arbitrator.

The AAA is an integral part of the Wyndham arbitration agreement and the AAA is referenced multiple times.   The clause states that the arbitration **shall** be administered by the AAA.   Doc. 1 ¶12   Page ID4-5.

### 3. Appointing A Substitute Arbitrator in All Wyndham AAA Cases Would Create an Undue Burden on Federal Courts

Numerous Wyndham Owners seek cancellation every year.   Doc. 1 ¶5, Page ID2. In three years alone, the Better Business Bureau received 2,165 complaints about Wyndham.   Doc. 1 ¶5 at PageID 17.   Appointment of substitute arbitrators would be an administrative burden for federal courts. The Middle District of Florida had difficulty dealing with the fifty-nine separate lawsuits filed against Wyndham by one attorney. For reasons of efficiency, the court stayed all but five of the cases. *See Buxton, supra,* at *1. If even a small percentage of Owners who request cancellation file AAA arbitrations, then federal courts would be faced with prospect of repeatedly having to select substitute arbitrators.   Federal courts would be taking over as arbitration administrators. Wyndham expressly assigned this role to the AAA.   Doc. 49 at PageID 718.

32

### E.   The District Court Was Correct In Not Compelling Arbitration Back Again Before The AAA

The district court wrote, "… Defendants are now requesting the Court to compel an arbitration that would, in effect, bully the AAA to arbitrate an agreement that violates its own Consumer Due Process Rules…."    Doc. 57 at Page ID860.   It concluded that "…while the claims may have originally been arbitrable under the Agreement, Defendants' actions have foreclosed the arbitration of these claims under the plain language of the FAA." Doc. 57 at PageID863.

Further, the AAA is not a party to this case. The district court was correct in declining to enter an Order requiring action by a third party over whom it had no jurisdiction.   In addition, such an Order would have forced the AAA to violate its own rules and policies.

### F.   The District Court Correctly Denied the Motion to Compel Arbitration of the Claims of Plaintiffs Diaz and Clark

Wyndham contends that there is nothing in the record to indicate that the AAA would decline to hear arbitration claims of Plaintiffs Diaz and Clark who contracted with Worldmark.   In fact, the Complaint alleges that the AAA will not hear Worldmark cases.    Paragraph 3 of the Complaint

explains that the Worldmark arbitration clause requires that any AAA arbitration proceed only in Orange County, Florida.   Paragraph 4 alleges:

> The AAA has removed Wyndham and Worldmark from its Consumer Clause Registry.    The AAA Registry lists companies for whom the AAA will administer consumer arbitrations.    Wyndham and Worldmark are not on the list. Doc. 1 ¶4 at PageID2.

Therefore, the district court was correct in concluding that it would have been futile for Plaintiffs Diaz and Clark to have filed AAA arbitration claims. The court said it would not require them to go through the procedure of filing AAA claims only to be sent back to the court.   Doc. 57 at PageID 860, n. 9.   In short, there is support in the record to conclude that the AAA will not hear Worldmark cases.

## CONCLUSION

For the aforesaid reasons, Plaintiffs-Appellees respectfully request that this Court affirm the denial of Defendants-Appellants' motion to compel arbitrations and that this cause be remanded to the district court.

August 10, 2022

Respectfully submitted,

LAW OFFICES OF HOWARD B. PROSSNITZ, PLLC

*/s/ Howard B. Prossnitz*
Howard B. Prossnitz
1014 Ontario Street
Oak Park, IL 60302
 (708) 203-5747
prossnitzlaw@gmail.com

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that on this 10th day of August 2022, that this Brief complies with the Type-Volume Limitation, Typeface Requirements:

1. This document complies with the word limit requirements of Federal Rule of Appellate Procedure 32(a)(7)( B) because it contains 6,923 words, exclusive of the portions exempted by F. R. App. Pro. 32(f).

2. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2019 in roman style typeface of 14 points.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on August 10, 2022, I served this brief electronically through the ECF filing system on counsel of record including:

*Howard B. Prossnitz /s/*
*Attorney for Plaintiffs-Appellants*